230 F.2d 655
 Richard W. DAVIS and J. W. Clements, Appellants and Cross-Appellees,
v.
The BUCK-JACKSON CORPORATION and H. L. Buck, Jr., and A. E. Jackson, Jr., d/b/a Buck and Jackson, Appellees and Cross-Appellants.
 No. 7124.
 United States Court of Appeals Fourth Circuit.
 Argued January 13, 1956.
 Decided February 8, 1956.
 Writ of Certiorari Denied May 28, 1956.
 
 See 76 S.Ct. 846.
 J. Preston Swecker, Washington, D. C. (John B. McCutcheon, Conway, S. C., and William L. Mathis, Washington, D. C., on the brief), for appellants and cross-appellees.
 John H. Lewis, Jr., Washington, D. C. (Harvey B. Jacobson, Washington, D. C., and Franklin G. Burroughs, Conway, S. C., on the brief), for appellees and cross-appellants.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This appeal was taken from a judgment dismissing a suit for the infringement of United States Patent No. 2,176,622 relating to a miniature carpet golf course in which each hole is constructed on a rigid solid base consisting of a filling set in a boundary mold frame flush with the top thereof, and a characteristic carpet covering the base and extending on to the top edge of the frame. The marginal portion of the carpet is fastened directly to the top of the frame and a separate guard rail is secured to the frame on top of the marginal part of the carpet and serves as a supplemental fastening for the carpet.
 
 
 2
 The two questions for decision are: (1) whether the defendants, who are charged with infringing the patent at Myrtle Beach, Horry County, South Carolina, are estopped from contesting the validity thereof by taking a license from the owner of the patent to use the device in Dare County, North Carolina; and (2) whether the patent is invalid for lack of invention.
 
 
 3
 We think that the District Court, 138 F.Supp. 908, was correct in deciding the first question against the plaintiffs for the reasons stated in the opinion of Judge Williams in the District Court. We held in Tate v. Baltimore & Ohio R. Co., 4 Cir., 229 F. 141, that a licensee is not estopped to deny the validity of a patent when the license is at an end, whether by reason of the expiration of time or the completion of the number of patented articles for which it is provided, because there is no longer any contract relation. The same principle as applied to a license limited as to area was enuniciated by Judge Denison in Indiana Mfg. Co. v. Nichols & Shepard Co., C.C.E.D.Mich., S.D., 190 F. 579, 584, as follows.
 
 
 4
 "* * * If the complainant had licensed defendant to manufacture and sell machines in Indiana, but not elsewhere, and had then learned that the defendant was manufacturing and selling in Michigan, it might, and probably would, file an ordinary, plain infringement bill. Such a license could not then be urged by defendant as any defense, because it would not be pertinent to the act complained of; and so it would seem that, in such a bill, complainant could take nothing whatever from the existence of the license. It would be substantially accurate to say that the license did not exist in Michigan.
 
 
 5
 "The estoppel must be mutual. The licensee may not deny the pattentee's title to the monopoly; the patentee may not deny the licensee's right to act under that monopoly. It is difficult to see how, when the act involved is the manufacture of a certain machine, at a specified place or in a specified way, and both complainant and defendant agree that there is no contract in existence permitting the act in controversy, either party can be estopped by a contract relating to something else.
 
 
 6
 "* * * It seems to me quite clear that the complaining patentee cannot, at the same time, maintain the position that the act of the defendant licensee, manufacturing what is said to be the patented article, is outside the conditions of the license, and, therefore, not authorized by the license, and also the position that his title to the monopoly is conceded by the license and, therefore, cannot be disputed."
 
 
 7
 See also Chance v. Leigh Nav. Coal Co., D.C.E.D.Pa., 25 F.Supp. 532, affirmed 3 Cir., 107 F.2d 1009; International Burr Corp. v. Wood Grinding Service, 2 Cir., 34 F.2d 905; T. H. Symington Co. v. National Malleable Castings Co., D.C.N.D.Ill., E.D., 257 F. 564; DeCew v. Union Bag & Paper Corp., D.C. N.J., 57 F.Supp. 388.
 
 
 8
 The decision in Sinko Tool & Mfg. Co. v. Casco Products Corp., 7 Cir., 89 F.2d 916 is not at variance with these decisions. The defendant was operating under a license limited to the manufacture of a particular class of articles and expressly agreed not to contest the validity of the patents as shown by the following quotation from the opinion: at page 918.
 
 
 9
 "`For the purpose of the agreement,' appellant agreed that it would take no steps or proceedings contesting the validity of the patents. Inasmuch as the purpose was to grant all of the inventions to appellant for the accessory trade and to restrain it from entering the standard equipment trade with the same mechanism, it must have been the intent of the covenant to bind appellant to estoppel equally as to both sorts of equipment."
 
 
 10
 We are also of the opinion that the patent was lacking in patentable invention for the reasons stated in the opinion of Judge Hoffman in the District Court. As shown in that opinion, quoting a statement of the Examiner, the British patent to King, 28,007, disclosed:
 
 
 11
 "a device having a concrete base, a rail forming a mold for the base and a carpet-like member secured to the rail through its extent. The upper portion of the rail A of King could be separated from the lower portion if desired. Such separate rail, if placed on the carpet portion, would have only an obvious result and that would be a clamping or holding action."
 
 
 12
 The Judge added "It is obvious that the King patent covers all of the features of plaintiffs' patent with the possible exception of (1) a separate guard rail, and (2) securing the guard rail on top of the marginal portion of the carpet, thus permitting the guard rail to serve as a supplemental fastening for the carpet.
 
 
 13
 "The use of a guard rail on a miniature golf course was not novel with Davis. Design Patent No. 83,499 issued to Carter on March 3, 1931, provided for same. Malloy, No. 1,625,265, while having many of the features of a game of billiards, contains a `surrounding ball cushioning wall' similar to the guards on a billiard table. Inman, No. 1,952,624, provided for a rebounding wall or rail to such an extent that the ball `is substantially prevented from leaving or bouncing upon the playing floor or surface'. It is abundantly clear to this Court that plaintiffs' claim of novelty in the guard rail is without merit.
 
 
 14
 "It is true that, except in Malloy, a separate guard rail is not provided and does not serve as a supplemental fastener for the covering or carpet. The Malloy patent was not cited as a reference by the Examiner on the Davis patent. If there is any invention in the Davis patent, it lies in this feature. While the Malloy patent has apparently not received commercial acceptance, this is largely immaterial to a final determination of this case. The separate guard rail in Malloy is undoubtedly more complex in construction than that in Davis, but it certainly serves as a supplemental fastener to the felt or fabric covering.
 
 
 15
 "The remaining features of the Davis patent are so clearly covered by prior arts that it is unnecessary to discuss them in this opinion.
 
 
 16
 "It is the conclusion of this Court that the Davis patent represents an assembly of old elements taken from prior arts relating to allied types of construction and, while undoubtedly a beneficial and successful improvement, does not involve the exercise of inventive faculty; thus the patent is invalid. Interstate Rubber Products Corp. v. Radiator Specialty Co., Inc., 4 Cir., 214 F.2d 546."
 
 The judgment of the District Court is
 
 17
 Affirmed.